IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JEFFREY R. BERRY,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>Defendant. | Case No. 3:16-cv-00735-AA<br>OPINION AND ORDER |

AIKEN, Judge:

Plaintiff Jeffrey R. Berry brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Act. For the reasons set forth below, the Commissioner's decision is affirmed in part, reversed in part, and remanded for further proceedings.

PAGE 1 – OPINION AND ORDER

## BACKGROUND

On November 4, 2012, plaintiff Jeffrey R. Berry filed an application for DIB that alleged disability since July 10, 2009. Tr. 17, 162-63, 280. Plaintiff based his request for benefits on a number of conditions, including osteoarthritis in the spine and knees, chronic pain, degenerative disc disease, and spinal herniations. Tr. 281. The application was denied initially and again upon reconsideration. Tr. 96-100, 102-105. Following a hearing, an Administrative Law Judge ("ALJ") found plaintiff not disabled on December 19, 2014. Tr. 14-29. The Appeals Council denied review, and plaintiff subsequently filed a complaint in this Court. Tr. 1-4.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision so long as 1) it is based on proper legal standards and 2) its findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). The district court reviews the record as a whole, and must weigh both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). If evidence presents the possibility for multiple interpretations and the Commissioner's decision is rational, the decision must be affirmed because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that plaintiff did not engage in substantial activity between his alleged onset date of July 10, 2009 and his date last insured of December 31, 2011. Tr. 19; 20 C.F.R. §§ 404.1520(a)(4)(i), (b). At step two, the ALJ found that plaintiff had the following severe impairments: bilateral knee arthritis, lumbar radiculopathy, spinal stenosis, status post left total knee arthroplasty, and bursitis of the right hip. Tr. 19; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). At step three, the ALJ found that plaintiff's impairments, whether considered singly or combination, did not meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 20; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

The ALJ found plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567(b), except that plaintiff could only stand and walk for two hours in an eight-hour workday. Tr. 21; 20 C.F.R. §§ 404.1520(e). The ALJ included several other limitations in plaintiff's RFC, including limiting plaintiff to sitting for six hours in a workday and to pushing and pulling as much as he could lift and carry. Tr. 21. At step four, the ALJ found that through the date last insured, plaintiff was unable to perform any of his past relevant work. Tr. 27; 20 C.F.R. §§ 404.1520(a)(4)(iv), (f).

At step five, the ALJ found plaintiff could perform several jobs existing in significant numbers in the national economy. Tr. 27-28; 20 C.F.R. §§ 404.1520(a)(4)(v), (g). The ALJ based this decision on plaintiff's age, education, work experience, and RFC, and determined that plaintiff could have performed the requirements of occupations like the following: cashier, small

products assembler, and electronics worker. Tr. 27-28. Accordingly, the ALJ found plaintiff not disabled and denied his application for benefits.

## DISCUSSION

Plaintiff alleges that the ALJ erred by (1) rejecting plaintiff's testimony about the severity of his symptoms; (2) rejecting a medical opinion on the severity of plaintiff's symptoms; (3) classifying plaintiff as capable of performing light work as defined by agency guidelines; and (4) relying on the testimony of a vocational expert. I address each argument in turn.

I. *Plaintiff's Symptom Testimony*

Plaintiff argues the ALJ failed to provide adequate reasons under the "clear and convincing" standard to partially discredit plaintiff's testimony. *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014). Defendant argues the ALJ's disregard for the testimony is supported by substantial evidence and should be affirmed.

The Ninth Circuit applies a two-step approach when reviewing the ALJ's treatment of a plaintiff's symptom testimony. First, the ALJ evaluates "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1014 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)) (internal quotation marks omitted). Second, "[i]f the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [the] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014-15.

In the present case, plaintiff alleged that several ongoing symptoms and the need to treat these symptoms have limited his ability to continue working as a general contractor. In particular, plaintiff testified to disabling symptoms of pain stemming from osteoarthritis in his

knees and spine, degenerative disc disease and herniations in the spine. According to plaintiff, this pain has resulted in his need to use a cane, his inability to maintain regular workplace attendance, and his need to ice and elevate his left leg. Tr. 44, 57, 65.

Ultimately, the ALJ found that objective medical evidence supported plaintiff's claim that he suffers from these impairments, which could be expected to cause pain. Tr. 26. The ALJ then found, however, that plaintiff's daily activities and medical record did not support the alleged severity of the impairments. *Id.* The ALJ did not find, nor does defendant argue, that plaintiff malingered. Given these facts, the ALJ was required to support the rejection of plaintiff's symptom testimony with specific, clear and convincing reasons.

The ALJ rejected plaintiff's symptom testimony for two reasons. First, the ALJ noted plaintiff's activity level after the alleged onset of disability in July 2009. Plaintiff testified to working part-time until 2011, and notations in the medical record indicate plaintiff hiked daily and took several hunting trips prior to 2011. For example, plaintiff reported hiking on a daily basis in August 2009, hunting elk on two occasions in 2009 and 2010, and hunting bear during a "dream trip" to Alaska in 2010. Plaintiff stated that he carried up to 85 pounds in equipment and game during these expeditions, and similarly reported carrying up to 85 pounds in tools during the months he worked part-time winterizing homes. The ALJ found these "robust outdoor activities" incompatible with plaintiff's alleged symptoms. Tr. 26.

Second, the ALJ reasoned that while the objective medical evidence in the record was consistent with some level of pain, that same evidence did not support the *severity* alleged by plaintiff. Under Ninth Circuit law, an absence of corroborative medical evidence cannot be an ALJ's sole reason for concluding that a plaintiff's pain testimony is not credible, but it may serve as a factor in the analysis. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir.

2009). Here, the ALJ focused on medical reports documenting plaintiff's knee impairments, and reasoned that these reports demonstrated plaintiff was not limited to the extent alleged during that period. For instance, the ALJ cited positive reports following a 2011 left knee surgery — itself a follow-up to an orthoscopic knee surgery in 2009 — as proof that plaintiff's allegations were exaggerated. Similarly, the ALJ noted how symptoms in plaintiff's right knee improved after injections and how subsequent X-rays of his left knee demonstrated good alignment. Tr. 26.

In dismissing plaintiff's testimony on the basis of daily activity and the medical record, the ALJ did not directly mention plaintiff's purported need for a cane, daily icing, and irregular workplace attendance. Instead, the ALJ simply referred to plaintiff's testimony as an "allegation that he is incapable of all work activity." Tr. 26. Plaintiff argues that by failing to identify what testimony the ALJ deemed not credible, these findings fall short of the specificity required under the aforementioned "clear and convincing" standard. In doing so, plaintiff likens the case to *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015), where the court found that a summary of medical evidence "is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited." Defendant counters by arguing the degree of clarity in an ALJ's findings need only be sufficient "to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell*, 947 F.2d at 345 (internal quotation marks omitted).

Plaintiff's argument fails in part and succeeds in part. Upon review, the ALJ provided a clear and convincing reason for dismissing plaintiff's symptom testimony with respect to the

period before plaintiff's 2011 total knee replacement surgery. Plaintiff's ability to hike and travel on multiple hunting trips in 2009 and 2010 casts considerable doubt on his need for a cane or daily icing. Moreover, coupled with his ability to maintain part-time work during this same time period, these activities support rejecting plaintiff's assertion that he would be unable to maintain regular work attendance.

Yet the ALJ's reasoning falls short of clear and convincing for the period of disability following the 2011 surgery. While elk and bear hunting suggest a high activity level before 2011, the record makes no mention of such excursions in the period following this reconstructive surgery. Meanwhile, plaintiff's work as a part-time contractor ceased in 2011, a detail acknowledged by the ALJ in the findings. The ALJ fails to cite any evidence following the 2011 surgery that supports the finding that plaintiff's daily activity level exceeded the limitations described in his 2012 application and testimony at the hearing. The remaining reasons cited by the ALJ in the decision — *e.g.*, that plaintiff could still clean his house and enjoy such hobbies as reading or watching television — are clear but not convincing. Reading and housecleaning are limited activities that do not preclude a finding of disability. Finally, the ALJ fails to address aggravated back pain to which plaintiff had testified, a symptom that plaintiff alleged developed about the same time of the surgery. Tr. 45, 49. None of the daily activities cited by the ALJ dispel this claim either.

Activities aside, much of the medical evidence cited by the ALJ does postdate the 2011 surgery. But this evidence is insufficient to support rejection of plaintiff's testimony regarding his post-surgery limitations for two reasons. First, the mere absence of corroborating evidence cannot be the sole factor on which an ALJ dismisses plaintiff testimony. *Bray*, 554 F.3d at 1227. As explained above, the ALJ's only other reason for rejecting symptom testimony in the post-

surgery period is unconvincing. Second, none of the evidence cited by the ALJ goes so far as to contradict plaintiff testimony. For instance, the ALJ cited medical reports issued following the surgery that indicate that plaintiff was recovering well. The ALJ also noted that the positive X-ray results dated 2012. These positive medical reports are not inconsistent with the need to use a cane, the need to ice or elevate daily, or irregular workplace attendance. Similarly, a report in 2012 stating that "[t]he knee is looking great" does not preclude any of the limitations put forth by plaintiff. Tr. 396. In its brief, defendant notes how the orthopedic specialist encouraged plaintiff to consider a less demanding line of work as evidence that this doctor believed plaintiff was capable of working. But this reason is no better; even if the specialist provided formal medical clearance, it would not rule out the possibility that the doctor also recommended icing, the use of a cane, or limited hours. The ALJ also cited one medical record that precedes the 2011 surgery, documenting plaintiff's treatment of his right knee pain through Supartz injections. Tr. 23, 811. Plaintiff received five injections in late 2010, after which he stated he could climb a ladder. Tr. 811-21. This medical evidence contradicts plaintiff's symptom testimony prior to May 2011, but not afterward. Right knee treatment bears no relation to a major left knee surgery taking place months later.

In sum, I find the ALJ had clear and convincing reasons for rejecting plaintiff's symptom testimony through May 2011. From that point forward, the ALJ's reasons fall short of clear and convincing because they fail to account for plaintiff's major knee surgery and the significant drop-off in activity that followed. Moreover, while medical records demonstrate that plaintiff was recovering well during this time, such a recovery is not inconsistent with the limitations alleged in his 2012 application.

II.  *Physician's Assistant Daniel Sitkowski's Opinions*

Plaintiff's next argument is that the ALJ failed to give a germane reason for discounting the opinions of Physician's Assistant Daniel Sitkowski. Defendant argues that substantial evidence supports the ALJ's rejection of Mr. Sitkowski's statements.

Traditionally, ALJs must provide only a "germane" reason to reject testimony from professionals outside the category of acceptable medical sources. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Professionals in this category include chiropractors, registered nurses, and physician's assistants like Mr. Sitkowski. However, under Social Security Ruling ("SSR") 06-03p, these "other health care providers" may be entitled to greater weight depending on the nature of the treating relationship. *See* SSR 06-3p, 71 Fed. Reg. 45,593, 45,595 (Aug. 9, 2006). In determining how much weight to give to the statements of such a source, the ALJ is to consider 1) the frequency and duration of treatment, 2) the consistency with other evidence, 3) the quality of explanation of opinion and 4) the individual's specialty area. *Id.*

In October 2014, Mr. Sitkowski provided plaintiff with a treating source statement that asserted the following:

> [A]s of May of 2011, [plaintiff] has been unable to engage in any work activity on a sustained basis that required more than two hours of standing in an eight hour work day, even with a sit-stand option. Even with this limited standing, [plaintiff] would be required to periodically rest with his left leg elevated and iced.

Tr. 1008. The ALJ gave Mr. Sitkowski's opinion some weight, adopting his opinion that plaintiff ought to be limited to two hours of standing in an eight-hour work day. But the ALJ rejected the second half of Mr. Sitkowski's statement, ruling out the need for plaintiff to periodically ice and elevate his leg. Tr. 25. In support of this decision, the ALJ stated that the icing requirement was not supported by the record because plaintiff's knees improved after

treatment and because plaintiff's "functionality in May of 2011 . . . would not be reflective of his functionality over time, as he would have been in the acute recovery phase at that time." *Id.*

Based on the record, it appears Mr. Sitkowski's medical opinion may be entitled to greater weight under SSR 06-3p. Regarding the frequency and duration of treatment, Mr. Sitkowski began providing care to plaintiff in 2010, overseeing the five Separtz injections in plaintiff's right knee. Tr. 811-24. In 2013, Mr. Sitkowski resumed treating plaintiff, reviewing X-rays of plaintiff's knees and discussing a plan to identify pain symptoms. Tr. 719-21, 729. In 2014, three days before issuing his statement, Mr. Sitkowski reviewed X-rays of plaintiff's hips and offered to provide plaintiff with a referral for orthopedic surgery if he was interested. Tr. 1005-1008. Regarding his specialty area, Mr. Sitkowski worked in the orthopedics department at Providence at the time of the statement, indicating he is knowledgeable about potential limitations following knee surgery. *Id.*

Yet regardless of the weight that should be given to Mr. Sitkowski's opinion — whether the ALJ needed a germane reason or something more — the reasoning put forth by the ALJ is not sufficient. This is because the ALJ apparently mistook the date of Mr. Sitkowski's comments. The ALJ stated that functionality in May of 2011 would not capture plaintiff's functionality over time, suggesting that this functionality would improve following the acute recovery phase. But Mr. Sitkowski did not issue his statement in May 2011; he issued it in October 2014, well beyond the acute recovery phase.

The ALJ's other rationale for dismissing the testimony — that plaintiff did in fact improve after the 2011 left knee surgery — fails on the same grounds. Mr. Sitkowski cited the date of that knee surgery in his very statement. As such, Mr. Sitkowski was aware of plaintiff's total knee replacement and the improvement that plaintiff experienced following the surgery. He

did not issue his 2014 opinion in ignorance of plaintiff's improvement; he did so with full knowledge of plaintiff's post-surgery history.

The ALJ offered no other reasons for rejecting this portion of Mr. Sitkowski's medical opinion. Therefore, the ALJ failed to provide adequate reasoning to reject Mr. Sitkowski's opinion that plaintiff, in a workplace environment, would need to periodically ice and elevate his left leg.

III. *Step Five Analysis*

    A. *Medical-Vocational Classification*

Plaintiff argues the ALJ improperly determined that plaintiff is capable of light work, as opposed to sedentary work, as defined under the medical-vocational rules at 20 C.F.R. pt. 404, subpt. P, app'x. 2. Defendant argues the ALJ acted within his discretion in selecting which rule to apply as a framework.

The ALJ found plaintiff's RFC to fall between the guidelines for sedentary work and light work. Tr. 21. Specifically, the ALJ found plaintiff is capable of performing all light work as defined in agency regulations, except that plaintiff cannot stand for longer than two hours in a given work day. *Id.* Exactly where plaintiff falls between these two work categories is a key battleground for the parties because both agree that if plaintiff is limited to sedentary work, he is disabled. Def's Br. at 17; Pl.'s Reply Br. at 2. This is because plaintiff has limited opportunities for sedentary work given his age, education and work experience. *Id.* Under SSR 83-12, the Social Security Administration has made it clear that an ALJ should use the assistance of a vocational expert "in situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory

criteria for exertional ranges of work." SSR 83-12, 1983 WL 31253, *3 (Jan. 1, 1983). This is what the ALJ did.

Plaintiff does not challenge the finding that his RFC falls somewhere between the criteria for light and sedentary work, nor does he challenge the decision to consult a VE. Plaintiff instead argues that the ALJ, after consulting the VE, committed reversible error by not limiting plaintiff solely to sedentary work. Pl.'s Reply Br. 5 ("[I]t is the use of that vocational information that resulted in reversible error.").

Plaintiff's argument fails. This is an area of discretion for the ALJ. The VE identified three light work occupations (out of 1600 total light and sedentary work jobs) that plaintiff could perform. In making that determination, the VE specifically considered the limitations in plaintiff's RFC that narrow the range of available light work. Plaintiff argues that these three jobs are the *only* three jobs available in the light work classification; however, the VE never said that. Rather, the ALJ clearly states that the VE testified plaintiff "would have been able to perform the requirements of representative occupations *such as* . . . cashier II . . . small products assembler; and electronic worker . . . ." Tr. 28 (emphasis added). In Social Security disability decisions, the VE frequently provides several examples from a pool of jobs consistent with a given RFC. The ALJ's decision not to limit plaintiff to sedentary work is supported by substantial evidence.

B. *VE Testimony*

Finally, plaintiff argues that the ALJ failed to resolve a conflict between the definition of light work in the Dictionary of Occupational Titles ("DOT") and the VE's testimony, and that relying on the testimony was improper. By contrast, defendant argues the ALJ properly addressed any conflict between the two sources.

PAGE 12 – OPINION AND ORDER

The ALJ is required to follow three steps when evaluating information provided by a VE. *See* SSR 00-4p, 2000 WL 1898704, *4 (Dec. 4, 2000). First, the ALJ has "an affirmative responsibility to ask about any possible conflict" between the VE's testimony and the relevant DOT definitions. *Id.* Second, the ALJ must "obtain a reasonable explanation" in the event of an apparent conflict with the DOT. Finally, the ALJ must address such a conflict in his or her final decision. *Id.*

In the present case, the ALJ sought input from the VE about whether the VE's testimony was "consistent with the DOT under your experience." Tr. 25. Plaintiff concedes that this question satisfied the first requirement under SSR 00-4p. But plaintiff argues that the ALJ failed the second and third requirements by not obtaining an adequate explanation for the conflict between plaintiff's limitation to two hours of standing per day and the definition of light work in the DOT, which generally permits standing for up to "approximately 6 hours of an 8-hour workday." *See* SSR 83-10, 1983 WL 31251, *6 (Jan. 1, 1983).

Plaintiff is correct that VE testimony proposing a sit-stand option creates an apparent conflict with the DOT. *See Ruiloba v. Colvin*, 2016 WL 3067440, *4 (C.D. Cal. May 31, 2016) ("[U]npublished Ninth Circuit cases suggest that there is an apparent conflict . . . where, like here, the vocational expert testifies that there are jobs available at the light or sedentary exertional level for a claimant who needs a sit-stand option."). However, the ALJ properly resolved the conflict with the DOT by relying on the expertise of the testifying VE. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Under Ninth Circuit law, "[a] VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Id.* In the present case, the VE testified that fifty percent of the jobs in the three representative occupations she identified "can be done with the sitting, standing,

changing in positions." Tr. 64. She based that statement on "the research and [her] own professional experience." Tr. 64. The ALJ acknowledged this in the decision, noting that the estimated job numbers were based on the research and professional experience of the VE. Tr. 28 n. 2-3. Reliance on such expertise is a permissible way to resolve conflict between VE testimony and the DOT. The ALJ complied with the requirements of SSR 00-4p.

IV.  *Type of Remand*

Under Ninth Circuit law, neither plaintiff's symptom testimony nor Mr. Sitkowski's medical opinion should be credited as true on remand because outstanding issues of fact remain in this case. *Brown-Hunter*, 806 F.3d at 495-96. Before crediting erroneously rejected statements as true, a reviewing court must first determine that the ALJ committed a harmful legal error, such as a finding that did not meet the appropriate legal standard and one that affected the ultimate disability decision. As explained above, the ALJ in this case committed two errors. First, the ALJ improperly rejected plaintiff's testimony with respect to the period after the May 2011 surgery. Second, the ALJ failed to provide sufficient reasons to discredit Mr. Sitkowski's statements about plaintiff's need to ice and elevate his leg. Moreover, the errors were not harmless; the plaintiff's symptom testimony and Mr. Sitkowski's opinion lend credence to significant workplace limitations that, if accepted at the time, may well have changed the outcome in this case.

Yet in addition to finding harmful legal error, a reviewing court must also "conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose." *Id.* (quotation marks omitted). I cannot draw that conclusion here. Although it is clear the ALJ erred, it is equally clear that the record is underdeveloped. On plaintiff's symptom testimony, more information is needed to determine what became of plaintiff's daily

activities following his major knee surgery in 2011. The ALJ is correct that plaintiff performed substantial activities prior to this surgery that reasonably preclude a finding of disabled; whether plaintiff resumed these activities, or whether his activity level changed substantially after surgery, is a question of fact that must be addressed on remand.

As for Mr. Sitkowski's statement, the ALJ's error is a factual one, not one of reason. Had Mr. Sitkowski's statement been issued in 2011 immediately after the surgery, the ALJ rationally could have concluded that it would not be a reliable indication of plaintiff's functionality now. Further administrative proceedings will serve a useful purpose because it will make certain that the ALJ has accepted or rejected Mr. Sitkowski's statement with a correct understanding of the record.

## CONCLUSION

The Commissioner's decision is AFFIRMED in part (as to the period before plaintiff's May 2011 surgery), REVERSED in part (as to period after the May 2011 surgery), and REMANDED for further proceedings.

IT IS SO ORDERED.

Dated this 30th day of June 2017.

_____
Ann Aiken
United States District Judge